UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X

| | | |
|---|---|---|
| PETER KAPLAN, | : | 14-CV-4945 |
| | : | (RJS/GWG) |
| Plaintiff, | : | |
| -against- | : | **FOURTH** |
| | : | **AMENDED** |
| THE CITY OF NEW YORK, POLICE OFFICERS MARCOS | : | **COMPLAINT** |
| MARTINEZ, and VARIOUS JOHN/JANE, | : | |
| DOES INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES | : | |
| AS EMPLOYEES OF THE CITY OF NEW YORK WHO | : | |
| ARE/WERE MEMBERS OF THE POLICE DEPARTMENT OR | : | **JURY TRIAL** |
| CORRECTIONS DEPARTMENT OF THE CITY OF NEW YORK, | : | **DEMANDED** |
| | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------------------------X

Plaintiff Peter Kaplan, by and through his attorney, John F. Schutty of The Law
Office of John F. Schutty, P.C., complaining of the Defendants, respectfully alleges:

**JURISDICTION & VENUE**

1.    This action arises under the Constitution of the United States, particularly
the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the
United States through the Civil Rights Act, Title 42 U.S.C. §§ 1983 and 1988, as well as
Article I, §§ 1, 5, 6, 9 and 11 of the New York State Constitution, for the violation of
Plaintiff's civil rights.

2.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and
1343.

3.    This Court also has supplemental, ancillary and pendant jurisdiction to
adjudicate all claims asserted under state law herein under 28 U.S.C §§ 1367.

4.      The acts and transactions constituting the civil rights violations occurred in the County of New York and within the confines of the United States District Court for the Southern District of New York.   In addition, Defendants reside, are found, have agents, or transact their affairs in the Southern District of New York.  Venue is, therefore, proper in the Southern District pursuant to 28 U.S.C. §§ 1391 (b).

## THE PARTIES

5.      Plaintiff was, at the time of the acts alleged herein, a citizen of the United States and resident of the County of New York, residing at 1021 Park Avenue, Apt 13D, New York, NY 10028.

6.      At all times referred to herein, Defendant City of New York ("City") was and still is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York, and situated within the Southern District of New York.

7.      At all times referred to herein, the Police Department of the City of New York (hereinafter "NYPD") and New York City Department of Correction ("NYCDC") were and still are agencies or instrumentalities of the City.  The NYPD and NYCDC did not and do not have legal identities separate and apart from the Defendant City.

8.      At all times referred to herein, Defendants Marcos Martinez   [NYPD Shield # 5053] (hereinafter "Martinez"), was employed by the Defendant City as a police officer within the 19th Precinct, 153 East 67th Street**,** New York**,** NY**,** 10065-5964.

9.      At all times referred to herein, various John/Jane Doe NYPD Police Officers (hereinafter collectively referred to as the "NYPD John/Jane Does"), were

employed by the NYPD as police officers, supervisors, and/or policy makers within the NYPD.

10.     At all times referred to herein, various John/Jane Doe NYCDC Corrections Officers (hereinafter collectively referred to as the "NYCDC John/Jane Does"), were employed by the NYCDC as corrections officers, supervisors, and/or policy makers within the NYCDC.

11.     At all times referred to herein, Defendant Martinez, and various NYPD and NYCDC John/Jane Does, individually and in their official capacities as employees of the City of New York who are/were members of the NYPD and/or NYCDC, were employed by Defendant City and were involved in acts and/or omissions relating to the, physical injuries and/or sexual assault of Plaintiff (and the theft of his personal property) in their individual and/or official capacities.

12.     Upon information and belief, and at all relevant times, Defendant Martinez, and various NYPD and NYCDC John/Jane Does, individually and in their official capacities as employees of the City of New York who are/were members of the NYPD and/or NYCDC, were employed by the Defendant City, and acted at all times within the scope of their employment for the Defendant City.

13.     At all times referred to herein, Defendant Martinez, and various NYPD and NYCDC John/Jane Does, individually and in their official capacities as employees of the City of New York who are/were members of the NYPD and/or NYCDC, were acting under the color and pretense of the statutes, ordinances, regulations, customs, and usages of the City and State of New York and under the authority of Defendant City.

14.     At all times referred to herein, Defendant City, and its agents, servants and representatives, including Defendant Martinez, and various NYPD and NYCDC John/Jane Does, individually and in their official capacities as employees of the City of New York who are/were members of the NYPD and/or NYCDC, were responsible for protecting individuals in custody, giving truthful evidence, revealing exculpatory evidence (and refraining from withholding or falsifying evidence), making further inquiry when reasonable in a criminal and/or official misconduct investigation (and not deviating from accepted practices in that regard), and preserving, storing, and producing critical evidence resulting from a criminal investigation and/or conviction and/or official misconduct investigation upon request; these Defendants were also responsible for supervising the incarceration of arrested individuals and ensuring their safety from other prisoners; these Defendants were obliged to perform all these functions in accordance with the Constitutions and laws of the State of New York and the United States to ensure that innocent people are not arrested, prosecuted, convicted and incarcerated unjustly.

## NOTICE OF CLAIM & ARTICLE 50(H) HEARING

15.     Plaintiff served written Notice of Claim upon the City and NYPD on or about October 4, 2013.  More than thirty (30) days have passed since the service and filing of said Notice and the claim has not been settled or otherwise resolved.

16.     Plaintiff was prepared to appear and answer questions posed by counsel for the City at a hearing held pursuant to Section 50-H of the General Municipal Law, but the City failed to request such a hearing -- after the original date scheduled was adjourned on consent.  The City has assigned Claim No. 2013PI025904 to Plaintiff's claim.

17.     Plaintiff has satisfied all conditions precedent for the filing of the within action.

## INTRODUCTION TO THE CLAIM

18.     Plaintiff Peter Kaplan was released from jail on July 11, 2013 after a four day incarceration for a crime that he did not commit.  He was arrested and incarcerated, handcuffed improperly, processed as a prisoner (strip-searched and his body cavities checked for contraband), transferred between detention facilities and subsequently released by the Defendant City after a four day, three night incarceration.  The People of the State of New York alleged on July 8, 2013 that "[o]n or about June 30, 2013 at about 3:00 pm, at 1021 Park Avenue in the County and State of New York, the defendant [Peter Kaplan] possessed a dangerous and deadly instrument and weapon with the intent to use it unlawfully against another; the defendant [Kaplan], with intent to cause physical injury to another person, attempted to cause such injury to another person; the defendant [Kaplan], with intent to harass, annoy and alarm another, subjected that person to physical contact and attempted and threatened to do the same."   The arrest and incarceration of Plaintiff resulted, even though no physical injury occurred (or was shown), the alleged victim was not questioned or interviewed (and/or notes of that interview were wrongfully destroyed because they should that the criminal acts never occurred), and no weapon was ever located.

19.     On July 8, 2013, Plaintiff Peter Kaplan was charged with the following crimes: "PL 265.01 Criminal Possession of a Weapon in the Fourth Degree," "PL 110/120.00(1) Attempted Assault in the Third Degree," and "PL 240.26 Harassment in the Second Degree."

## FACTUAL AND PROCEDURAL BACKGROUND

20.     On July 8, 2013, Plaintiff was a Board-certified psychiatrist, specializing in pediatric and adult psychopharmacology, with no criminal history.  His then-wife of many years, Andrea Karambelas, was/is a fashion designer.  On July 8, 2013, Plaintiff and his wife were living together in an apartment at 1021 Park Avenue, New York, NY, and were spending summers together on Eastern Long Island.

21.     In the days and weeks prior to July 8, 2013, Karambelas had made frequent, unfounded complaints about Plaintiff to the police in the 19th Precinct and the police in Southampton, New York.  No arrests or convictions ever resulted.  In fact, Karambelas had made dozens of unfounded domestic abuse claims against Plaintiff to either the Southampton or New York City police since 1995.  In the days, weeks and months prior to July 8, 2013, Plaintiff met with police officers to address several unfounded complaints made by his then-wife and established her continuing lack of credibility.

### A.   The "Events" of July 8, 2013

22.     Monday, July 8, 2013, began as a very eventful day for Plaintiff and his then-wife, Karambelas, because that morning, Plaintiff served Karambelas with divorce papers at approximately 8 a.m.  Karambelas responded to the divorce papers by spending hours with NYPD officers (Martinez, *et al*.) developing a story to charge Plaintiff with crimes in New York County in retaliation for the service of the divorce papers – crimes that allegedly were committed days and weeks earlier.

23.     At approximately ten (10) p.m. on July 8, 2014, many uniformed police officers (with a SWAT team) arrived at Plaintiff's apartment -- without an arrest warrant

and without a search warrant.  These uniformed police officers (and SWAT team) "pushed into" Plaintiff's apartment without his consent and began to ransack his apartment allegedly looking for weapons and guns. Among other things, a gold Rolex watch was removed from the apartment and was not returned to Plaintiff.  He was told that he was not under arrest, but he was handcuffed while he was in his underwear. Plaintiff asked for an attorney and told the police they did not have consent to search his apartment.  The police officers, nevertheless, entered his apartment over his protest.  No weapons were found in the apartment and no one was injured at the scene, yet Plaintiff was immediately arrested and charged with, among other things, Criminal Possession of a Weapon in the Fourth Degree.  His son was present, but the police officers, for some unknown reason, refused to interview Wildon Kaplan about whether the underlying allegations made against his father were true or not (and/or the police officers destroyed notes of their interview with him).[1]

**B.    Plaintiff Is Wrongfully Handcuffed & Imprisoned**

24.    While his apartment was being unlawfully searched, Plaintiff was told that he could not reenter his apartment and retrieve his prescription eyeglasses or medication because he was under arrest.  He was placed in handcuffs in a known, improper manner

---

[1]    Wildon Kaplan, at age 19, subsequently testified under oath at a *Lincoln* Hearing that the incident described by his mother didn't occur and that the District Attorney's Office did not contact him and inappropriately influenced his mom as to what occurred: "there was no violence or anything" (Tr. at 14; DEF147); "The Court: And do you recall any physical interaction between you and your dad or you and your mom or you, mom and dad?  The Child [Wildon]: I don't – with me, no . . . I would say no, I would say it was a verbal.  The Court: Have you seen physical interaction between your parents before, have you observed any?  The Child: Not really.  The Court: Has either parent been physical with you?  The Child: No, I would say not." (Tr. at 34 -35; DEF147 – 148); "I was just trying to really desperately reach him [ADA Michael Frantel]. . . I just feel that he was inappropriate with my mom sometimes.  The Court: In what way?  The Child: She had claimed that she felt like a lot of times he was influencing her inappropriately, was saying inappropriate things . . . . (Tr. at 46; DEF159).  *See* Transcript of Testimony taken of

in the hallway outside his apartment.  The handcuffs were improperly locked too tightly on Plaintiff's right wrist by Defendant Martinez; despite Plaintiff's complaints of pain, the handcuffs were not removed or loosened (causing bleeding and a permanent injury to the right wrist).  There was an unusually high number of police present, with six (6) to twelve (12) police cars in front of his apartment building, when Plaintiff was taken outside in handcuffs in front of neighbors.

25.    Plaintiff was transported to the NYPD's 19th Precinct and was photographed, fingerprinted and otherwise processed as a criminal for engaging in "domestic violence" and employing a "dangerous weapon."  Plaintiff has estimated that he was in handcuffs for a total of about fourteen (14) hours during his incarceration.

26.    Plaintiff was initially incarcerated at the 19th Precinct for approximately five (5) hours and he was, thereafter, taken to Central Booking and then placed into the "general population" where he was unable to see properly (without his eyeglasses) and where his clothing was stolen a piece at a time by other inmates -- despite his repeated complaints to those in charge about a lack of supervision by police officers/corrections officers.  As a result of being denied his eyeglasses and his medication, his physical condition began to deteriorate.  Moreover, a high bail of $25,000 was improperly requested for Plaintiff's release because Defendant Martinez and ADA Frantel claimed that Plaintiff was in possession of handguns (he was not).

27.    Plaintiff's blood pressure was very low during his second day of incarceration and several EKGs showed that Plaintiff was suffering from a very irregular heartbeat.   When paramedics were summoned to the jail, Plaintiff was sprayed

Wildon Kaplan in *Kaplan v. Karambelas*, on Dec. 16, 2013 (S.Ct. N.Y. Co. Part 20, Index No. 401958/13) (DEF137 - 159).

improperly with nitroglycerin against his will (no consent).  This improper spraying caused severe muscle pain/spasm and a further lowering of plaintiff's blood pressure.

28.     During his last night of incarceration (Wednesday night), Plaintiff was taken to a "holding cell" in the Manhattan House of Detention ('MHD") because he was scheduled to be arraigned and released on bail.  He frequently advised corrections officers at the MHD that his clothes were being stolen from him and that he had been physically threatened by other inmates.  While he was incarcerated within this "holding cell," and while he waited for the processing of his paperwork and release, two or three inmates held him down while another inmate or inmates raped him (at approximately 8 pm).[2]  Although Plaintiff repeatedly complained to correction officers at each of the locations where he was held -- that he was being assaulted and abused by other inmates due to his age and size (prior to the sexual assault, he asked to be placed in protective custody) -- no corrections officers offered him any assistance or supervision in the hours prior to the sexual assault or in the hours following the sexual assault.  Plaintiff was released from the MDC at approximately four (4) a.m. on Thursday, July 11, 2013.

### C.     Plaintiff Is Found Innocent After Trial

29.     After lengthy pretrial delays, the criminal charges asserted against Plaintiff proceeded to a bench trial before the Honorable Ellen Bibben on June 16, 2015. The sole witness who testified at Plaintiff's criminal trial was Andrea Karambelas. Plaintiff was found not guilty of all charges.

---

[2]  Plaintiff had to take AZT (as recommended by the National Academy of Infectious Disease) in an effort to prevent an HIV infection (AZT has its own risky side effects). Plaintiff now has to be tested for HIV for ten years and he has had to change his sexual behavior as he now risks any partner's health if he engages in unprotected sex (this has huge social ramifications).

### D.    Plaintiff's Damages

30.    Plaintiff suffered substantial injuries and/or damages as a result of his assault, battery, arrest, criminal proceedings, incarceration and sexual assault, including but not limited to the following: months of physical suffering, pain, mental anguish, emotional distress, nervousness, depression, sleep disturbance, shame, embarrassment and humiliation caused by the incidents of July 8-11, 2012; loss of enjoyment of life; injury to reputation; loss of business; an inability to engage in his medical practice; the loss of his homes; loss of friends; loss of family company (his son) ; psychological injury (Post Traumatic Stress Disorder); the taking of medication (AZT) and HIV testing for the rest of his life; increased medical expenses and visits to doctors; loss of earnings/pecuniary loss; physical and emotional injuries caused by his torture at the hands of inmates; a permanent right wrist and shoulder (radial nerve) injury (he has been told that he will need "fusion surgery"), and the loss of a gold Rolex watch.

### LEGAL CLAIMS

### FEDERAL LAW CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### AGAINST INDIVIDUAL DEFENDANTS & CITY
### FOR THEIR WRONGFUL VIOLATION OF
### PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF STATE LAW
### (USE OF EXCESSIVE FORCE & PERMANENT WRIST INJURY)

31.    Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 30, inclusive, with the same force and effect as if set forth at length herein.

32.    In *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Supreme Court held that "[all] claims that law enforcement officers have used

excessive force deadly or not in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard ..." *Id.*at 395, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (emphasis in original); *see also Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990).  The use of handcuffs is a use of restraint and force, subject to the constitutional objective reasonableness standard of the Fourth Amendment.

33.     Moreover, when analyzing such a claim, the proper application of the Fourth Amendment's test of reasonableness "[r]equires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455 (citing *Tennessee v. Garner,* 471 U.S. [1, 8-9, 105 S.Ct. 1694, 1699-1700, 85 L.Ed.2d 1, 7-8 (1985)] (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure")); *see also Finnegan,* 915 F.2d at 823.  It is "well-established" law that overly tight handcuffing can constitute excessive force.

34.     All of Plaintiff's interactions with NYPD police officers were completely nonviolent. Plaintiff was confronted and arrested for committing an alleged act of domestic violence that occurred nine (9) days earlier.  Plaintiff never posed a threat to any police officer.  No officer was ever in any danger.  No weapon was found on his possession or in his home.  No injury was observed.  No risk of flight existed.  And, Plaintiff is a relatively small man who advised police officers of his prior wrist injury. Nevertheless, Plaintiff's wrists were tightly handcuffed behind his back for hours and his

many complaints of wrist pain to Defendant Martinez and various other NYPD John/Jane Does were ignored.  Moreover, the type of handcuffs then used by the NYPD were dangerous and have since been replaced.  *See* NIJ Standard 0307.01.  Since Defendants Martinez and City were responsible for the wrongful handcuffing, they are also responsible for all of his ensuing injuries.

35.     In fact, Plaintiff repeatedly complained to Defendant Martinez and various other NYPD John/Jane Does about the tight handcuffs and his wrist pain.  Plaintiff, in fact told Martinez and various other NYPD John/Jane Does that he had three prior surgeries on his right wrist and that his right wrist was bleeding.  These Defendants acted with deliberate indifference to Plaintiff's medical needs.  The Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1994), defined "deliberate indifference" stating, "acting or failing to act with deliberate indifference to a substantial risk of harm to a prisoner is the equivalent of recklessly disregarding the risk."  Defendant Martinez and various other NYPD John/Jane Does inflicted the injury.  Having inflicted the injury, they also knew about the complaint of the injury, although perhaps not the severity.  They therefore knew of the risk to Plaintiff.  These Defendants disregarded that risk in ignoring Plaintiff's pleas for medical attention, and in fact, in not obtaining medical attention.

36.     Defendant Martinez and various other NYPD John/Jane Does, acting under color of state law, by their actions and/or omissions, demonstrated deliberate indifference to Plaintiff's life and safety and/or serious medical needs.

37.     Defendant Martinez and various other NYPD John/Jane Does each either knew or should have known of the deficiencies alleged herein which were and are within his/her jurisdiction.

38.     Defendant Martinez and various other NYPD John/Jane Does each knew or should have known that there was a foreseeable risk of serious harm as a result of the deficiencies alleged herein.

39.     As a result of Defendant Martinez's and various other NYPD John/Jane Does' mistreatments, Plaintiff experienced extreme pain and suffering, emotional distress, and a permanent right wrist injury and right radial nerve injury.

40.     Each of the aforementioned individual Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

41.     Thus, pursuant to 42 U.S.C. § 1983, Plaintiff now demands judgment against Defendants Martinez, City and various NYPD John/Jane Does, for compensatory damages totaling Five Million Dollars ($5,000,000.00), punitive damages, plus attorney's fees, costs, expenses, and any other and further relief this Court deems just and proper.

**SECOND CAUSE OF ACTION
AGAINST INDIVIDUAL NYPD &/OR NYCDC JOHN/JANE
DOE DEFENDANTS & CITY FOR THEIR WRONGFUL VIOLATION
OF PLAINTIFF'S CIVIL RIGHTS UNDER COLOR OF STATE LAW
(8TH AMENDMENT - DUTY TO PROTECT AGAINST ASSAULT)**

42.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 41, inclusive, with the same force and effect as if set forth at length herein.

43.     In *Farmer v. Brennan*, 511 U.S. 825 (1994), the U.S. Supreme Court recognized that failing to prevent sexual violence in detention can amount to a violation of the Eighth Amendment prohibition of cruel and unusual punishment.

44.     Plaintiff's clothing and personal effects were continually taken from him while he was incarcerated; he repeatedly complained to NYPD John/Jane Does and/or

NYCDC John/Jane Does that he was being robbed and assaulted while he was incarcerated between July 8 and July 11, 2013.   His many complaints were totally ignored and were treated with disdain.

45.   In fact, Plaintiff repeatedly complained to NYPD John/Jane Does and/or NYCDC John/Jane Doe Defendants about the violence being inflicted upon him while he was incarcerated.   These Defendants nevertheless acted with deliberate indifference to Plaintiff's needs and the protection required to prevent a violation of the Eighth Amendment. The Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1994), defined "deliberate indifference" stating, "acting or failing to act with deliberate indifference to a substantial risk of harm to a prisoner is the equivalent of recklessly disregarding the risk." These NYPD John/Jane Does and/or NYCDC Defendants were made explicitly known of the risk to Plaintiff.   These Defendants, nevertheless, disregarded that risk in ignoring Plaintiff's pleas for assistance.

46.   These NYPD John/Jane Does and/or NYCDC John/Jane Does, acting under color of state law, by their actions and/or omissions, demonstrated deliberate indifference to Plaintiff's life and safety and/or serious medical needs.

47.   These NYPD John/Jane Does and/or NYCDC John/Jane Does each either knew or should have known of the deficiencies alleged herein which were and are within his/her jurisdiction.

48.   These NYPD John/Jane Does and/or NYCDC John/Jane Does each knew or should have known that there was a foreseeable risk of serious harm as a result of the deficiencies alleged herein.

49.     At approximately 8 p.m. on July 11, 2013, Plaintiff was held down, raped and sexually assaulted by several prisoners while he was left completely unprotected and unsupervised in a holding cell.

50.     As a result of acts and omissions of certain NYPD John/Jane Does and/or NYCDC John/Jane Doe Defendants, Plaintiff experienced extreme pain and suffering, emotional distress, and permanent psychological injuries.

51.     Each of the aforementioned individual Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

52.     Thus, pursuant to 42 U.S.C. § 1983, Plaintiff now demands judgment against these NYPD John/Jane Does and/or NYCDC John/Jane Does and the City, for compensatory damages totaling Fifty Million Dollars ($50,000,000.00), punitive damages, plus attorney's fees, costs, expenses, and any other and further relief this Court deems just and proper.

**THIRD CAUSE OF ACTION**
**AGAINST THE CITY FOR ITS POLICY MAKERS'**
**WRONGFUL VIOLATION OF PLAINTIFF'S CIVIL**
**RIGHTS UNDER COLOR OF STATE LAW (MUNICIPAL LIABILITY)**

53.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 52, inclusive, with the same force and effect as if set forth at length herein.

54.     Municipalities and their subdivisions may be held liable to an individual if they enforce a policy or custom that causes the deprivation of the individual's constitutional rights.

55.     Municipal liability may be based upon:

        a.      a formally promulgated policy;

      b.      a well settled custom or practice;

      c.      a final decision by a municipal policymaker; or

      d.      deliberately indifferent training or supervision.

56.    Defendant City, by and through its final policymakers, maintained the following unconstitutional customs, decisions, policies, and/or indifferent employee training or supervision practices that allowed for various constitutional violations:

      a.      NYPD personnel routinely employed excessive force in effecting arrests and caused wrist injuries by failing to properly handcuff prisoners;

      b.      City/NYPD/NYCDC personnel routinely disregarded procedures for supervising inmates, especially inmates who might be assaulted by other inmates;

      c.      City/NYPD/NYCDC personnel routinely ignored prisoner complaints and offered no protection to prisoners unable to protect themselves from other prisoners;  and

      d.      City/NYPD/NYCDC personnel were not properly trained and supervised in protecting prisoners from other prisoners in custody.

57.    The City's unconstitutional customs, decisions, policies and/or indifferent employee training or supervision practices were: (a) deliberately or recklessly indifferent to a criminal defendant's constitutional rights,  (b) deliberately or recklessly indifferent to the proper application of handcuffs, and (c) deliberately or recklessly indifferent to the safety of prisoners within their care (this has been well-documented for years).

58.     The City's municipality liability here is premised upon, among other things, its failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

59.     The aforesaid conduct operated, *inter alia*, to deprive Plaintiff of important and well established rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and rights established by the Constitution of the State of New York, including Plaintiff's right not be significantly detained pretrial except pursuant to a fair and reliable determination of probable cause, his right to be free from bad-faith prosecution, his right not to be subject to an unreasonable search and seizure, his right to a fair trial, his right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment.

60.     As a direct and proximate result of the City's unconstitutional customs, decisions, policies and/or indifferent employee training or supervision practices, Plaintiff was physically injured, tortured, raped and sexually assaulted while imprisoned.  During all of these events, Plaintiff endured substantial physical, emotional and pecuniary injuries detailed above.

61.     Thus, pursuant to 42 U.S.C. § 1983, Plaintiff now demands judgment against Defendant City for compensatory damages totaling Fifty Million Dollars ($50,000,000.00), plus attorney's fees, costs, expenses, and any other and further relief this Court deems just and proper.

## STATE LAW CAUSES OF ACTION

### FOURTH CAUSE OF ACTION
### AGAINST NYPD & NYCDC JOHN/JANE DOE
### DEFENDANTS AND THE CITY FOR NEGLIGENCE

62.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 61, inclusive, with the same force and effect as if set forth at length herein.

63.     Certain NYPD and NYCDC John/Jane Doe Defendants and the Defendant City, through its agents, servants and representatives employed at both the NYPD and the NYCDC, negligently monitored, supervised and controlled the locations where Plaintiff was imprisoned between July 8 and July 11, 2013.

64.     Certain NYPD and NYCDC John/Jane Doe Defendants and the Defendant City, through its agents, servants and representatives employed at both the NYPD and the NYCDC, negligently trained and supervised its agents, servants and representatives employed at both the NYPD and the NYCDC who were in charge of monitoring Plaintiff's incarceration between July 8 and July 11, 2013.

65.     As a result of Plaintiff's helplessness during his incarceration between July 8 and July 11, 2013, certain NYPD and NYCDC John/Jane Doe Defendants and the Defendant City assumed a special duty to protect Plaintiff from harm caused by other inmates.

66.     In breaching the aforementioned duty and obligation, certain NYPD and NYCDC John/Jane Doe Defendants and the Defendant City allowed Plaintiff to be beaten, robbed and sexually assaulted despite notice of Plaintiff's helpless condition.

67.     As a direct and proximate result of the negligence of certain NYPD and NYCDC John/Jane Doe Defendants and Defendant City, Plaintiff was beaten, robbed and sexually assaulted.  During all of these events, Plaintiff endured substantial physical and emotional injuries.

68.     Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiff.

69.     Defendant City is liable for the wrongful acts and omissions of its servants, agents and/or representatives under the doctrine of *respondeat superior*.

70.     Accordingly, Plaintiff demands judgment against certain NYPD and NYCDC John/Jane Doe Defendants and the Defendant City for compensatory damages totaling Fifty Million Dollars ($50,000,000.00), punitive damages, plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.

**FIFTH CAUSE OF ACTION**
**AGAINST THE CITY FOR MUNICIPAL LIABILITY**
**UNDER THE CONSTITUTION OF THE STATE OF NEW YORK**

71.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 70, inclusive, with the same force and effect as if set forth at length herein.

72.     Municipalities and their subdivisions may be held liable to an individual if they enforce a policy, decision, practice or custom that causes the deprivation of the individual's rights under the Constitution of the State of New York.

73.     Municipal liability may be based upon:

   a.     a formally promulgated policy;

   b.     a well settled custom or practice;

     c.     a final decision by a municipal policymaker; or

     d.     deliberately indifferent training or supervision.

74.     Defendant City, by and through its final policymakers, maintained the following customs, decisions, policies, and/or indifferent employee training or supervision practices, that allowed for the violations of Article 1, §§ 6 and 11 of the New York State Constitution:

     a.     NYPD personnel routinely employed excessive force in effecting arrests and caused wrist injuries by failing to properly handcuff prisoners;

     b.     City/NYPD/NYCDC personnel routinely disregarded procedures for supervising inmates, especially inmates who might be assaulted by other inmates;

     c.     City/NYPD/NYCDC personnel routinely ignored prisoner complaints and offered no protection to prisoners unable to protect themselves from other prisoners; and

     d.     City/NYPD/NYCDC personnel were not properly trained and supervised in protecting prisoners from other prisoners in custody.

75.     The City's unconstitutional customs, decisions, policies and/or indifferent employee training or supervision practices were: (a) deliberately or recklessly indifferent to a criminal defendant's constitutional rights, (b) deliberately or recklessly indifferent to the proper application of handcuffs, and (c) deliberately or recklessly indifferent to the safety of prisoners within their care (this was well-documented prior to Plaintiff's incarceration).

76. The City's municipal liability here is premised upon, among other things, its failure to adopt proper and reasonable policies and practices in the face of an obvious need to do so.

77. The aforesaid conduct operated, *inter alia*, to deprive Plaintiff of important and well established rights under Article 1, §§ 6 and 11 of the Constitution of the State of New York, including Plaintiff's right not to be significantly detained pretrial except pursuant to a fair and reliable determination of probable cause, his right not to be subject to unreasonable search and seizure, his right to be free from a bad-faith prosecution, his right to a fair trial, his right to freedom from the deprivation of liberty without due process of law, and his right to be free from cruel and unusual punishment.

78. As a direct and proximate result of the City's unconstitutional customs, decisions, policies and/or indifferent employee training or supervision practices, Plaintiff was falsely charged, falsely arrested, falsely imprisoned, maliciously prosecuted, forced to endure unfair criminal proceedings, and a rape and sexual assault. During all of these events, Plaintiff endured substantial physical, emotional and pecuniary injuries detailed above.

79. Accordingly, Plaintiff now demands judgment against Defendant City for compensatory damages totaling Fifty Million Dollars ($50,000,000.00), plus attorney fees, costs, expenses, and any other and further relief this Court deems just and proper.

## SIXTH CAUSE OF ACTION
## AGAINST CERTAIN DEFENDANTS FOR
## THEIR ASSAULT & BATTERY OF PLAINTIFF

80.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 79 inclusive, with the same force and effect as if set forth at length herein.

81.     Plaintiff had an interest in freedom from the apprehension of a harmful or offensive contact (and from actual offensive contact).

82.     Since the conduct of Defendant Martinez, and various John/Jane Does, caused Plaintiff to anticipate a harmful or offensive contact, these Defendants are liable to Plaintiff for the tort of assault.

83.     Since Defendant Martinez, and various John/Jane Does, also made harmful or offensive contact with Plaintiff or caused others to do so, these Defendants are liable to Plaintiff for the tort of battery.

84.     Each of the aforementioned Defendants is liable personally and in their official capacity for these acts which damaged Plaintiffs.

85.     Defendant City is liable for the wrongful acts and omissions of its servants, agents and/or representatives under the doctrine of *respondeat superior*.

86.     By reason of the foregoing, Plaintiff was caused to sustain severe and permanent personal injuries, was caused to suffer severe pain and mental anguish and was caused to expend sums of money for medical services and related expenses which continue into the future.

87.     Accordingly, Plaintiff now demands judgment against Defendant Martinez, various John/Jane Does, and Defendant City, for compensatory damages

totaling Fifty Million Dollars ($50,000,000.00), punitive damages, plus attorney's fees, costs, expenses, and any other and further relief this Court deems just and proper.

### SEVENTH CAUSE OF ACTION
### CONVERSION OF ROLEX WATCH
### AGAINST DEFENDANTS MARTINEZ &
### NYPD JANE/JOE DEFENDANTS AND DEFENDANT CITY

88.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth in this Complaint in paragraphs 1 through 87 inclusive, with the same force and effect as if set forth at length herein.

89.     Defendants Martinez, and certain NYPD Jane/Joe Defendants, intentionally and without authority, took and exercised control over a gold Rolex watch (President type) improperly removed from Plaintiff's apartment during a search of that apartment on July 8, 2013.

90.     These Defendants have refused to let the Plaintiff know the whereabouts of the watch or even if the watch is still in the Defendants' possession.

91.     Plaintiff has demanded the return of the watch, but these Defendants have refused to return it.

92.     Despite Plaintiff's request for payment and/or return of the watch, the Defendants have refused to pay its value.

93.     Defendants' refusal to return the watch is hostile to Plaintiff's right and title to said watch.

94.     As a result of Defendants' non-payment and refusal to allow Plaintiff to take possession of his watch, Plaintiff has been damaged.

95.     Defendant City is liable for the wrongful acts and omissions of its servants, agents and/or representatives under the doctrine of *respondeat superior*.

96.     Accordingly, Plaintiff now demands judgment against Defendant Martinez, various John/Jane Does, and Defendant City, for compensatory damages totaling Fifty Thousand Dollars ($50,000.00), punitive damages, plus attorney's fees, costs, expenses, and any other and further relief this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues.

WHEREFORE, Plaintiff demands a JUDGMENT, jointly and severally, against the Defendants as follows:

I.     For compensatory damages in the amount of Fifty Million Dollars ($50,000,000.00) plus Fifty Thousand Dollars ($50,000.00);

II.    For punitive damages in the amount of Fifty Million Dollars ($50,000,000.00);

III.   For reasonable attorneys' fees, together with costs and disbursements of this action pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court;

IV.    For pre-judgment interest and post-judgment, as allowed by law; and

V.     For such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       February 16, 2016

Respectfully submitted,
Law Office of John F. Schutty, P.C.
Attorneys for Plaintiff


By:_ *John F. Schutty*
    John F. Schutty
    (JS 2173)
271 Main Street,  2nd Floor
Eastchester, NY 10709
Tel: (914) 202-0076
Fax: (917) 591-5980